UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

DANIEL J. REGAN, ET AL.              CIVIL ACTION NO. 06-1257

versus                               JUDGE HICKS

STARCRAFT MARINE, L.L.C.             MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

**Introduction**

Daniel J. Regan ("Plaintiff"), a soldier in the U.S. Army, was injured while he was a passenger on a boat manufactured by Starcraft Marine, L.L.C. ("Starcraft") and that had been rented by Plaintiff's boating party from an Army recreational facility. Plaintiff sued Starcraft in state court, and Starcraft filed a third-party demand against the United States, which removed the case to this court. Before the court is a Motion to Dismiss (Doc. 3) filed by the United States seeking dismissal of the third-party demand. The United States argues that the third-party demand should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction pursuant to the Feres doctrine. For the reasons that follow, it is recommended that the motion be granted.

**Procedural History**

Plaintiff alleges he was severely injured when he fell from a pontoon boat while boating in the Toledo Bend Reservoir near the Army Recreation Cove in Sabine Parish, Louisiana. Complaint, ¶ 3. The boat was designed and manufactured by Starcraft, which

sold it to the Army.  ¶ 4.  Plaintiff alleges he was standing in the bow area of the boat  when the driver of the boat reduced speed, causing Plaintiff to lose his balance and fall forward. ¶ 5.  Plaintiff grabbed the gate on the front of the boat to try to regain his balance, but the gate ripped from the post to which it was attached, and Plaintiff  fell overboard.  ¶ 6.  The boat's propeller struck Plaintiff causing catastrophic and severe injuries.  ¶ 7.  Plaintiff sued Starcraft and John C. Vandergriff, the operator of the boat.

Starcraft removed the lawsuit to this court, and it was assigned docket number 06-129. Starcraft alleged the court had federal question jurisdiction because the accident occurred on property over which the United States had exclusive jurisdiction.  Notice of Removal, ¶ 3. The court remanded the case because Starcraft failed to demonstrate that the United States formally accepted jurisdiction over the site of the accident as required by 40 U.S.C. § 3112(b).  Following remand, Starcraft filed a third-party demand against the United States, the United States effected a second removal, and the case was assigned the current civil action number.  No party has challenged the propriety of this second removal.

Starcraft's third-party demand (Doc. 2-2) alleges that United States bought the boat in question for the exclusive use of the members of the United States Army stationed at Fort Polk, Louisiana.  Third Party Complaint, ¶ 9.  The boat was assigned by the Army, through its Directorate of Morale, Welfare and Recreation (MWR), to Fort Polk's Toledo Bend Recreation Site.  Id.  The boat was owned by the Army for the purpose of renting the boat exclusively to members of the Army for a fee.  Id.  Starcraft further alleges that the United

States was responsible for the proper maintenance, repair and care of the boat.  ¶ 12.  The United States is alleged to be negligent for, among other things, renting the boat to Vandergriff (the driver) when the boat was in disrepair and/or inadequately maintained; failing to provide adequate instructions regarding proper use of the boat to Vandergriff and his boating party; and failing to maintain and/or repair the boat.  ¶ 16.  The United States responded to the third-party demand by moving to dismiss based on the Feres doctrine.

**The Feres Doctrine**

The Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), permits the United States to be sued in federal district courts for the negligent or wrongful acts of its employees. The FTCA is a limited waiver of the sovereign immunity of the United States and has been strictly construed in favor of the United States. Vernell v. United States Postal Service, 819 F.2d 108, 111 (5th Cir.1987). The Supreme Court has articulated an exception to the FTCA waiver of immunity, referred to as the "Feres doctrine," holding that the Government is not liable under the FTCA for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service.  Feres v. United States, 340 U.S. 135, 146 (1950).  See also Parker v. United States, 611 F.2d 1007 (5th Cir. 1980); Schoemer v. United States, 59 F.3d 26 (5th Cir. 1995).  Feres also applies to reservists and National Guardsmen. Schoemer, supra at 29.

The immunity applies to both a primary suit by a member of the armed services for service-oriented injuries and to a third-party indemnity action arising from the same injuries.

Stencel Aero Engineering Corp. v. United States, 431 U.S. 666, 674 (1977);  Bynum v. FMC Corp., 770 F.2d 556, 563 (5th Cir. 1985).  In either case, to allow such a suit would require a civilian court to second-guess military judgments or otherwise to intervene in military matters at the possible expense of military discipline and effectiveness.  United States v. Shearer, 473 U.S. 52, 57 (1985); Bynum, 770 F.2d at 563.

In Shearer,  the Supreme Court reaffirmed the Feres doctrine, but instructed courts to take a case-by-case, rather than *per se* approach to claims for immunity.  The site of the incident, Shearer explained, is not nearly as important as "whether the suit requires the civilian court to second-guess military decisions" or "whether the suit might impair essential military discipline."  Id.  The Feres doctrine cannot be reduced to a few bright-line rules; each case must be examined in light of the statute as it has been construed in Feres and subsequent cases. Id.  See also Hayes v. United States, 44 F.3d 377, 378 (5th Cir. 1995).

In United States v. Johnson, 481 U.S. 681 (1987), the Court again reaffirmed Feres, and it applied the doctrine to bar the claim of a widow of a Coast Guard pilot who was killed while performing a rescue mission on the high seas.  The widow sought damages from the United States based on the alleged negligence of FAA flight controllers who had assumed positive radar control over the pilot's helicopter.  She attempted to avoid application of Feres on the grounds that the alleged tortfeasor was not a member of the military.  The district court applied Feres and dismissed the complaint.  The Eleventh Circuit reversed, finding that, although the Supreme Court had articulated numerous rationales for the Feres doctrine, the

effect of a suit on military discipline was the doctrine's primary justification.   The widow's claims directed at the fault of the civilian flight controllers did not undermine the military's authority to maintain discipline, so the appellate court was willing to permit the claims to be prosecuted.

The Supreme Court disagreed with the suggestion that the military status of the alleged tortfeasor is crucial to the application of the doctrine.  The Court also emphasized each of the three broad rationales underlying the Feres decision.  The first rationale is the "distinctively federal" character of the relationship between the Government and members of its armed forces.  That relationship is implicated to the greatest degree when a service member is performing activities incident to his federal service.  Johnson, 481 U.S. at 689. The second rationale is the existence of "generous statutory disability and death benefits." Id.  Those injured during the course of activity incident to service not only receive benefits that compare favorably with those provided by most worker's compensation statutes, but the recovery of benefits is swift and efficient.  Id.  The third rationale is that suits brought by service members against the Government for injuries incurred incident to service are the types of claims that would involve the judiciary in sensitive military affairs at the expense of military discipline and effectiveness.   Suits brought by service members against the Government for service-related injuries could undermine the commitment essential to effective service and thus have the potential to disrupt military discipline in the broadest sense of the word.  Id. at 691.  Stated differently: "Suits in which 'commanding officers

would have to stand prepared to convince a civilian court of the wisdom of a wide range of military and disciplinary decisions' are an improper interference by the judiciary in the management of the armed forces." Miller v. United States, 42 F.3d 297, 303 (5th Cir. 1995).

Feres applies if the serviceman's injury was incident to military service. Schoemer, 59 F.3d at 28.  To determine whether the injury was incident to military service, courts in the Fifth Circuit consider: (1) the serviceman's duty status; (2) the site of his injury; and (3) the activity he was performing. Id.  Duty status is viewed as a continuum ranging from active duty to discharge. Feres applies to a serviceman who is on active duty and has active status, but not to one who has been discharged. Id.  If the serviceman's duty status falls somewhere in the middle of the continuum, then duty status is less important, and the court looks to other factors. Id.  In the end, a court must determine whether an activity is incident to military service by examining the totality of the circumstances.  Miller, supra at 302.

**Analysis**

The United States has moved to dismiss Starcraft's third-party demand pursuant to the Feres doctrine. The United States attached to its motion affidavits containing testimony that Plaintiff was, at the time of the accident (and also when the motion was filed), an active duty soldier. Doc. 3-3 and 3-4.  The United States also provided evidence that the Toledo Bend Recreation Site is available to military personnel, their dependents, federal civilian employees of Fort Polk, and retirees.  The site is not available to the general public. Doc. 6-3, ¶ 3.  Personnel who use the recreation site are subject to the rules and regulations

established by the MWR Director and the Garrison Commander.  ¶ 4.  Soldiers who violate

those rules are subject to prosecution under the Uniform Code of Military Justice.  Id.  They

are also subject to Louisiana state law.  ¶ 5.  The United States points out that the accident

required an official Army investigation that resulted in a "Corrective Action and Command

Review" (Doc. 5-2, p.10 of 43), as well as a separate "Commander's Inquiry" (Doc. 5-2,

p.13-15 of 43).

Starcraft argues that Feres should not be applied when purely recreational activity is

involved.  Starcraft points out that Plaintiff was off-duty for the weekend at the time of the

accident, that the accident was not "mission related," and the accident occurred not on a

military installation but on the navigable waters of the Toledo Bend Reservoir.  Doc. 5-2, p.4

of 43. Starcraft argues that the only connection to the military is that the Army owned the

boat and operated the facility from which it was rented. Starcraft further argues that

Plaintiff's boating, swimming, napping, drinking beer, spending time with his girlfriend and

all of his other activities on the date of the accident have nothing to do with the military.

Starcraft also argues that the military was so disconnected from the accident that it left

prosecution of a related criminal action. (The driver of the boat, Sgt. Vandergriff, pleaded

no contest to a state court charge of operating the boat under the influence of alcohol.  Doc.

5-2, p.1-3 of 43.)  Starcraft states in its brief that it is "quite odd" that, if allowing a *civil* suit

against the United States would have the great effect on the military that the United States

claims it would, the United States left the pursuit of the *criminal* aspect of the accident to the

State of Louisiana.

**Recreational Activities and <u>Feres</u>**

Although the inquiry is extremely fact specific, and each case must be decided on its own facts, a review of other decisions involving injury to or death of a serviceman arising from recreational or personal activities is instructive.  In <u>Kelly v. Panama Canal Commission</u>, 26 F.3d 597 (5th Cir. 1994), an Army officer, who was off-duty for the weekend, was killed when the mast of the catamaran he was sailing through the Panama Canal struck hanging electrical wires.  The officer's widow sued the United States government agency that was responsible for the wires.  Because the decedent was off-duty, the court found that his duty status fell along the middle of the spectrum and was not a strong indicator of whether he was acting incident to service.  The accident did not occur on base.  The catamaran, which was rented from a civilian-run marina, was privately owned, and no special military rules or regulations applied to govern the conditions of its sailing.  Because the decedent was off-duty, off-base and engaged in a purely leisure activity that served no military purpose or function, and because the lawsuit would not affect military discipline or involve military judgment, <u>Feres</u> did not operate to bar the claim.

A different result was reached in <u>Bon v. United States</u>, 802 F.2d 1092 (9th Cir. 1986). Plaintiff was injured when the canoe in which she was riding was struck by a motorboat. Both the canoe and the motor boat had been rented from a Navy Special Services facility, which was under the direct responsibility of the commanding officer of the Naval Training Center.  While Plaintiff and the driver of the motorboat were on active duty, both were on authorized liberty at the time of the accident and were not engaged in official duties.

However, both Plaintiff and the motorboat operator were subject to military discipline for any violations of the Navy's rules for the rental and operation of the boats.

The <u>Bon</u> court held that <u>Feres</u> compelled a finding that subject matter jurisdiction was lacking. The accident occurred on or near the Special Services Center, a fact the court found was important but not controlling. Both Plaintiff and the driver of the motorboat were active duty service members and were taking part in an activity provided for the benefit of their military service. Use of the Special Services Center was restricted to members of the military and employees of the Department of Defense and their guests and dependents. Thus, Plaintiff did not occupy a status similar to that of a civilian with respect to her use of the Center's facilities. Plaintiff was subject to military orders and regulations for the particular activity in which she was engaged.

Other cases involving injury or death during recreational or personal activities further highlight the fact-sensitive nature of the <u>Feres</u> analysis. <u>See</u>, <u>e.g.</u>, <u>Hass v. United States</u>, 518 F.2d 1138 (4th Cir. 1975)(<u>Feres</u> barred claim for injury sustained while riding horse rented from Marine Corp's stable; serviceman could be disciplined for misconduct while using stable; recreational activity provided by the military can reinforce both morale and health and thus serve the overall military purpose); <u>Costo v. United States</u>, 248 F.3d 863 (9th Cir. 2001)(<u>Feres</u> barred claim for wrongful death of off-duty sailors resulting from Navy-sponsored recreational whitewater rafting trip; rafting program was within the command structure of the military and part of the Navy's Morale, Welfare and Recreation program); <u>Chambers v. United States</u>, 357 F.2d 224 (8th Cir. 1966)(<u>Feres</u> barred claim for drowning

of serviceman in on-base swimming pool; use of the pool was related to and dependent upon his military service); Schnitzer v. Harvey, 389 F.3d 200 (D.C. Cir. 2004)(Feres barred claim of prisoner, who was an active duty member of the Army, for injuries incurred when a portion of a ceiling in an inmate common area at Fort Leavenworth collapsed on him; plaintiff's argument that his recreational activity furthered no military purpose was belied by Army regulations which included recreational and leisure time as part of the Army's plan to enhance inmate welfare); Latchum v. United States, 65 Fed. Appx. 171 (9th Cir. 2003)(Feres barred claim by family of serviceman who, while vacationing on authorized leave at an Army Recreational Center, was shot and killed by civilian trespassers; the facility was owned by the Army and was part of the Army's Morale, Welfare and Recreation program; use of the facility was a benefit of the decedent's military status).

_____Other recreational injury claims have been found not to be barred by Feres.  See, e.g., Denham v. United States, 646 F.Supp. 1021 (W.D. Tex. 1986), affirmed, 834 F.2d 518 (5th Cir. 1987)(Feres did not bar claim of serviceman who was off-duty for the day and was injured in an off-base diving accident due to the Army Corps of Engineers' negligent maintenance of swimming area); Parker v. United States, 611 F.2d 1007 (5th Cir. 1980)(Feres did not bar claim of a serviceman on a four-day furlough who was killed when his privately owned vehicle was involved in an on-base collision with a military vehicle; decedent was on his way home off the base at the time of the accident; the function he was performing at the time of his death was not related to his military service); Elliott v. United States, 13 F.3d 1555 (11th Cir. 1994), vacated but later affirmed by operation of law because

the en banc court was equally divided, 37 F.3d 617 (11th Cir. 1994)(Feres did not bar claim of serviceman who, while sitting on his sofa watching television, went into a coma from carbon monoxide poisoning due to faulty venting system in his military-owned apartment residence; plaintiff was on a two-week leave at the time of the accident and not directly subject to military control; allowing the suit to proceed would not result in any threat to military discipline or the need to second guess military orders); Hall v. United States, 130 F.Supp.2d 825 (S.D. Miss. 2000)(Feres did not bar claim of serviceman and his children who died in their sleep due to carbon monoxide poisoning while asleep in military-owned housing at the Naval Air Station; serviceman was engaged in a purely personal activity while off-duty for the weekend).

## Application of Law to the Facts

### Duty Status

Plaintiff was on active duty at the time of the boating accident in this case, but he was off-duty for the weekend.  Therefore, as in Kelly, 26 F.3d 597, Plaintiff's duty status falls along the middle of the spectrum and is not a strong indicator of whether he was acting incident to service.

### Location of the Injury

Plaintiff was not injured on the military base, but the evidence submitted by the parties shows Plaintiff was injured on a boat owned by the Army and at a time when Plaintiff was attempting to return to the Army-operated MWR facility.   The exact location of the injury is a disputed fact.  In attempting to maintain federal question jurisdiction prior to the earlier

remand order, Starcraft contended that the injury occurred in an area of the Toledo Bend Reservoir that was under exclusive federal jurisdiction.  In light of the competing evidence offered by Plaintiff, the court refused to find that the site of the accident was subject to exclusive federal jurisdiction, and the court remanded the case for lack of subject matter jurisdiction. Starcraft now argues that, for the sake of consistency, the same rationale should apply in evaluating the site of the injury for the purpose of the <u>Feres</u> doctrine.  Opposition, pp. 8-9; Supplemental Opposition, pp. 3-4.  In any event, the accident did not occur on a military base.  It occurred on a boat on the waters of Toledo Bend while Plaintiff and the others on the boat were attempting to make their way back to the MWR facility.

### Activity Being Performed

Plaintiff and his friends were on the pontoon boat for recreational purposes only. They engaged in swimming, drinking beer, napping, relaxing and, as Plaintiff himself described it, "just hanging out."  Depo. of Plaintiff, p.81.  According to the statements and reports submitted by the parties in connection with the motion, the accident occurred when the boating party was attempting to return to the MWR dock and was searching for the right cove. Plaintiff apparently stood up from a seat in the bow of the boat at about the same time that the driver decelerated the boat.  Plaintiff lost his balance and grabbed the gate, which gave way, causing Plaintiff to fall overboard.

Starcraft argues that Plaintiff's activities were purely recreational in nature and had no relationship to the Government or Plaintiff's military service.  Starcraft notes that the Army's accident report characterizes the activity at the time of the accident as "not mission

related" and that the incident did not occur during training.  Starcraft argues that the situation in this case is more akin to the Fifth Circuit's decision in <u>Kelly</u> than the Ninth Circuit's decision in <u>Bon</u>.  Both cases are factually similar in that they both involved servicepersons who were injured while engaging in recreational boating.  However, the Fifth Circuit in <u>Kelly</u> distinguished <u>Bon</u> on the basis that Kelly was not directly subject to military control at the time of his injury.  Unlike Bon, Kelly was sailing a privately owned catamaran rented from a civilian-run mariana, and no special military rules or regulations applied to govern the conditions of his sailing.  In contrast, Bon had rented the canoe directly from the Navy's Special Services Center, which she had access to by virtue of her status as a member of the military.  She was subject to military discipline for violation of the Special Service rules governing the use of the facility and its equipment.  Furthermore, the Center was directly under the control of the commanding officer of the San Diego Naval Training Center.

Here, the pontoon boat was owned by the Army and rented from the Army's MWR facility.  Plaintiff and the other soldiers on the boat had access to the Toldeo Bend MWR facility solely as a result of their relationship to the military.  The MWR facility falls under the command of the Garrison Commander at Fort Polk and is governed by Army Regulation 215-1 and the Garrison Commander's Policy. Declaration of Loretta Nale, ¶ 2.  The mission of the MWR facility is to "provide the soldier and authorized patrons the opportunity to participate in recreation activities that are designed to promote relaxation, the development of skills and a sense of well being."  Government Ex. 3, Directorate of Morale, Welfare and Recreation  Community  Recreation  Division,  Toledo  Bend  Recreation  Site,  Standing

Operation Procedure, 2005 (Section II).  The site performs this mission by "providing facilities, equipment, qualified professional instruction, and a program adapted to the particular needs of the post."  Id.  The accident required an official Army investigation, which resulted in a "Corrective Action and Command Review" as well as a "Commander's Inquiry."  Thus, unlike in Kelly, the circumstances in this case directly impact military judgment and military discipline and would require this civilian court to second-guess military decisions and regulations concerning the MWR site and the maintenance and repair of the Army's boats, radios and other equipment.

**Conclusion**

After applying the relevant factors and considering the totality of the circumstances, the undersigned concludes that Starcraft's third-party demand against the United States is barred by the Feres doctrine because Plaintiff was acting "incident to service" at the time of his injury.  It is a very close question, but the military's command and control over the MWR facility in which the boat was rented and where its questioned maintenance was performed, tip the balance in favor of applying Feres in this case.

The Feres doctrine has been widely criticized and  called unfair.  Miller, 42 F.3d  at 307-308; Ruggiero v. United States, 162 Fed.App.140, 143 (3rd Cir. 2006); Schnitzer, 389 F.3d at 206.  But, as the Fifth Circuit has stated, "any final determination of its justness must be left to a higher authority than this Court."  Miller supra.   In this case, Plaintiff has not sued the United States for his injuries, so application of Feres here will not leave an injured individual without a tort remedy.  Only Starcraft has sued the United States (for indemnity).

Perhaps that militates against the harshness of applying the doctrine in this case, but Starcraft probably does not think so.

The dismissal of the United States does not necessarily mean that Starcraft faces a potential judgment that exceeds the degree of its own fault (if any).  Pursuant to La. C.C. art. 2323(A), the degree or percentage of fault of all persons causing or contributing to an injury shall be determined at trial, regardless of whether the person is a party and regardless of that person's immunity.  See Fontenot v. Dual Drilling, 179 F.3d 969, 973 (5th Cir. 1999).  Thus, the alleged negligence of the United States, even if dismissed from the case, may still be relevant under Louisiana law in assessing fault for the accident.

**Supplemental Jurisdiction; Remand**

The only basis for exercising original jurisdiction over this case, and the event that triggered removal, is Starcraft's assertion of an FTCA third-party demand against the United States. If that claim is dismissed, as recommended, the only basis to exercise jurisdiction over the remaining state-law claims between Plaintiff and Starcraft is supplemental jurisdiction as set forth in 28 U.S.C. § 1367.

Section 1367(c)(3) provides that the court may decline to exercise supplemental jurisdiction over a claim if it has dismissed all claims over which it had original jurisdiction. The rule applies in removed cases, and the district court enjoys wide discretion in deciding whether to remand the supplemental claims.  Noble v. White, 996 F.2d 797, 799 (5th Cir. 1993).  Despite the discretion vested in the district court, the Fifth Circuit has said that "[t]he general rule is that state claims should be dismissed once the basis for federal jurisdiction has

been dismissed." Engstrom v. First National Bank of Eagle Lake, 47 F.3d 1459, 1465 (5th Cir. 1995)(affirming remand of state law claims after federal claims were dismissed). See also Parker & Parsley Petroleum Co. v. Dresser Indus., 972 F.2d 580, 585 (5th Cir.1992) (reversing district court's exercise of supplemental jurisdiction over state law claims after federal law claims were dismissed).

Factors relevant to the court's exercise of its discretion include judicial economy, convenience, fairness, federalism and comity. Engstrom, supra. In Engstrom, the Court noted that the case had been pending in federal court for three years but there had been "no substantial commitment of judicial resources" by the federal system. This case is in its beginning stages, and discovery has been stayed pending resolution of the motion to dismiss, so there is little federal investment of judicial resources that will be wasted by a remand. Federalism and comity will be served by allowing the state courts to resolve the state law issues presented in Plaintiff's personal injury petition. The relevant factors strongly favor a remand of the remaining claims if the claims against the United States are dismissed.

Accordingly;

**IT IS RECOMMENDED** that the Motion to Dismiss (Doc. 3) filed by the United States be granted and that the Third-Party Demand filed by Starcraft against the United States be dismissed for lack of subject matter jurisdiction under the Feres doctrine.

**IT IS FURTHER RECOMMENDED** that this matter be remanded to the 11th Judicial District Court, Sabine Parish, Louisiana.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within ten (10) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED at Shreveport, Louisiana, this the 27th day of February, 2007.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE