UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

DANIEL J. REGAN AND                           CIVIL ACTION NO. 06-1257
FRANCIS ELWOOD REGAN, JR.

VERSUS                                        JUDGE S. MAURICE HICKS, JR.

STARCRAFT MARINE LLC, ET AL.                  MAGISTRATE JUDGE HORNSBY

**MEMORANDUM RULING**

Before the Court is a Motion for Partial Summary Judgment (Record Document 103) filed by defendant Starcraft Marine, LLC ("Starcraft"). Starcraft moves for dismissal of plaintiffs' claim that the subject pontoon boat was defective in design and manufacture because Starcraft did not include a propellor guard or did not offer a propellor guard as an option. Starcraft likewise moves for dismissal of plaintiffs' claim that Starcraft is liable because it failed to make the availability and advisability of such guards known to its customers and potential customers. For the reasons which follow, the Motion for Partial Summary Judgment is **GRANTED** and all of the aforementioned claims against Starcraft relating to the lack of a propellor guard are **DISMISSED**.

**BACKGROUND**

Plaintiff Daniel J. Regan ("Regan") was injured on April 16, 2005, while a passenger on a pontoon boat being operated on Toledo Bend Reservoir. While the facts leading up to the accident are disputed, there is no dispute that Regan ended up in the water and that his legs were struck by the unguarded propeller of the outboard motor. As a result of the propellor strike, Regan's right leg was amputated and his left leg suffered significant permanent injury.

The boat involved in the accident was a 2004 "Starcraft Marine Holiday 200 Fish,"

a 20-foot pontoon boat manufactured by Starcraft.  Starcraft installed a Mercury 60 horsepower "Big Foot" outboard motor onto the boat.  Starcraft was not the manufacturer of the outboard motor.  Starcraft sold the subject boat and five identical pontoon boats to the United States through a broker, Earle Kinlaw Assoc., Inc. ("EKA") on or about April 22, 2004.  Specifically, the boats were purchased from EKA, through the Nonappropriated Fund Procurement System, by the Morale, Welfare and Recreation Command for use at Fort Polk's Toledo Bend Recreation Site.

The EKA/Starcraft purchasing agreement referenced "boats, motors, and trailers."  See Record Document 117, Exhibits A & B.  An Order for Supplies and Services is attached to the purchasing agreement.  See id., Exhibit A at STR000230.  This order form outlines the equipment that is included with the Starcraft Marine Holiday Fish 200.  See id.  The order form lists a Mercury 60 motor, but makes no reference to a propeller, a propulsion system, or a propeller guard.  See id.  Starcraft did not provide a propeller or propulsion system with the boat and motor.  There is also nothing in the record indicating that Starcraft was specifically asked to provide a propeller or propulsion system with the boat and motor.  In fact, Starcraft has presented a fax from EKA to Loreanna Fox at Fort Polk dated April 22, 2004, stating in pertinent part:

   Note - motors do not come with props - you would buy these locally.

Id., Exhibit B at USA 000651.[1]  However, Plaintiffs contend that EKA did not advise the United States that propellers were not included in the order until after the signed quote was delivered.

---

[1] The United States, in the course of discovery in this case, produced the fax from EKA to Loreanna Fox at Fort Polk.  See Record Document 117 at 5.

## LAW AND ANALYSIS

**I.      Summary Judgment Standard.**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id., 477 U.S. at 322, 106 S. Ct. at 2552. If the party moving for summary judgment fails to satisfy its initial burden of demonstrating the absence of a genuine issue of material fact, the motion must be denied, regardless of the nonmovant's response. See Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). If the motion is properly made, however, Rule 56(c) requires the nonmovant to go "beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted). The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. See Little, 37 F.3d at 1075; Wallace, 80 F.3d at 1047. All factual controversies must be resolved in favor of the nonmovant. See Cooper Tire & Rubber Co. v. Farese, 423 F.3d 446, 456 (5th Cir. 2005).

**II.      Products Liability in Admiralty and Maritime.**

In their complaint, plaintiffs stated that "this is a case of admiralty and maritime jurisdiction." Record Document 1 at ¶ 1. They pursue their claims against Starcraft "under maritime negligence and strict products liability principles." Id. at ¶ 8. Likewise, in opposing the Motion for Partial Summary Judgment, the plaintiffs again state that "this is a maritime tort case." Record Document 112 at 7.

The law of products liability, including negligence and strict liability, is a part of the general maritime law. See East River Steamship Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 106 S.Ct. 2295 (1986). The policy judgment underlying strict liability in admiralty products liability cases is that liability should be imposed on parties who are best able to shield persons from hazardous products and equipment. See 1 Admiralty & Mar. Law § 5-6 (4th ed.).

The applicable substantive law of products liability in admiralty is found in the Restatement (Third) of Torts. Restatement (Third) of Torts, Section 1 provides:

> One engaged in the business of selling or otherwise distributing products who sells or distributes a defective product is subject to liability for harm to persons or property caused by the defect.

Restatement (Third) of Torts § 1 (1998). Section 2 further states:

> A product is defective when, at the time of sale or distribution, it contains a manufacturing defect, is defective in design, or is defective because of inadequate instructions or warnings. A product:
>
> (a)   contains a manufacturing defect when the product departs from its intended design even though all possible care was exercised in the preparation and marketing of the product;
>
> (b)   is defective in design when the foreseeable risks of harm posed by the product could have been reduced or

>> avoided by the adoption of a reasonable alternative design by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the alternative design renders the product not reasonably safe;
>
> (c) is defective because of inadequate instructions or warnings when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the instructions or warnings renders the product not reasonably safe.

Restatement (Third) of Torts § 2 (1998).

In its motion, Starcraft notes that although it installed the Mercury outboard motor on the boat at the factory, the entire boat package was shipped without a propeller or propulsion system. Further, Starcraft was not asked to provide either a propeller, propeller guard or a propulsion system for the motor with the boat. Instead, decisions regarding the incorporation of a propeller, propeller guard, and/or a propulsion system all fell with the buyer, in this case the United States. Thus, Starcraft argues that, as a matter of law, it cannot be liable for a product it did not manufacture and for a product which was not requested by the purchaser of the boat.

Plaintiffs oppose the motion, arguing that Starcraft was aware of the dangers of operating a pontoon boat without a propeller guard when it manufactured, assembled, and sold the boat/outboard motor unit. See Record Document 112 at 7. Plaintiffs further contend that "the fact that the motor is sold without a propeller does not prevent the manufacturer or seller from providing a propeller guard nor does it relieve a manufacturer or seller from either providing a propeller guard or, at the very least, advising the purchaser

regarding its advisability and availability." Id. at 9. Plaintiffs base this argument on the rationale that "a propeller guard can be used with any of the various kinds of propellers" and that Starcraft's obligation to provide such a guard is not dependent on the sale of a particular kind of propeller and exists even when the buyer chooses to select and purchase his own propeller. See id.

A critical distinction in this case is that when the subject boat/motor units left Starcraft's control, the boat/motor units were not equipped with propellers. There is also undisputed record evidence that EKA advised the United States, whether before or after the signed quote was delivered, that the motors did not come with propellers and that propellers would have to be bought locally. Starcraft did not manufacture, install, sell, or distribute the propeller that was involved in the accident in this case. Likewise, Starcraft was in no way involved in deciding what type of propeller to purchase and whether to install a propeller guard. The Court is also unconvinced by plaintiffs' argument that Starcraft should have provided some sort of universal propeller guard. The purchase and selection of a propeller guard was dependent upon the purchase and selection of a propeller, a decision that was not made by Starcraft.[2] Even any remote connection between Starcraft and the ultimate decision of whether to install a propeller guard is too legally attenuated to impose liability. Thus, under the limited facts and circumstances presented in this case, the Court finds that Starcraft cannot be held liable for plaintiffs' allegation that the subject

---

[2]Plaintiffs have not controverted Starcraft's contention that there are many different options of propeller guards available on the market, all dependent on the intended use of the boat. See Record Document 128 at 4.

boat was defective for failure to have a propeller guard.³  The Motion for Partial Summary Judgment is **GRANTED**.⁴

## CONCLUSION

Based on the foregoing, the Motion for Partial Summary Judgment (Record Document 103) filed by Starcraft is **GRANTED**.  All of Plaintiffs' claims related to the lack of a propeller guard, including the claim that Starcraft should have warned as to the availability and advisability of such guards, are **DISMISSED**.

An order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 17th day of March, 2010.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE

---

³Starcraft also moved for dismissal of plaintiffs' claim that it was liable because it failed to make the availability and advisability of propeller guards known to its customers and potential customers.  Plaintiffs appear to be arguing that the subject boat was defective because of an inadequate instruction/warning on this issue.  Under the facts and circumstances of this case, where the subject boat/motor unit did not contain a propeller when it left Starcraft's control, the Court finds that any obligation or duty to provide such instruction/warning more properly lies with the manufacturer/distributer of the propeller, not Starcraft.

⁴Starcraft also moved for partial summary judgment on Plaintiffs' claims regarding the lack of a propeller guard based on the government contractor defense.  Because the Court granted the motion on another ground, the Court did not reach the issue of the applicability of the government contractor defense.