UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

DANIEL J. REGAN AND                                    CIVIL ACTION NO. 06-1257
FRANCIS ELWOOD REGAN, JR.

VERSUS                                                 JUDGE S. MAURICE HICKS, JR.

STARCRAFT MARINE LLC, ET AL.                           MAGISTRATE JUDGE HORNSBY

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment (Record Document 198) filed by the United States of America ("the United States"), a third party defendant. The United States moves for summary judgment, arguing that Defendant Starcraft Marine, LLC ("Starcraft") cannot prove that negligence of the United States caused or contributed to Plaintiff Daniel J. Regan's ("Regan") injuries. See id. Starcraft opposes the motion. See Record Document 203. For the reasons which follow, the Motion for Summary Judgment is **GRANTED** and all of Starcraft's claims against the United States are **DISMISSED**.

**BACKGROUND**[1]

This is a maritime products liability and general maritime law negligence personal injury case. Regan was seriously injured on April 16, 2005, when he fell from the bow of a Starcraft pontoon boat designed, manufactured, and sold by Starcraft. Regan was a passenger on the pontoon boat, which was being operated on the Toledo Bend Reservoir by Defendant John C. Vandergriff ("Vandergriff").

---

[1] Many of the facts set forth in the Background Section of the instant Memorandum Ruling are drawn from the stipulated facts contained in the Pretrial Order (Record Document 223) submitted by the parties on June 21, 2010. Other facts are drawn from the United States' Statement of Undisputed Material Facts (Record Document 198-2), many of which were admitted by Starcraft in its Response to the United States' Statement Pursuant to Local Rule 56.1 (Record Document 203).

In April 2005, both Regan and Vandergriff were Staff Sergeants in the United States Army, Missouri National Guard. Both were also assigned to Fort Polk in Leesville, Louisiana and served as members of Fort Polk's Military Police.

The subject pontoon boat is a 2004 model year Starcraft Holiday 200 Fish Hull Identification Number #STR80734F404 and designated by the United States Army as #35. Starcraft sold the subject boat and five identical pontoon boats to the United States through a broker, Earle Kinlaw Assoc., Inc. ("EKA") on or about April 22, 2004. The six boats were sold as a package and the United States paid $14,108 for each boat and Mercury outboardmotor.

The six boats were purchased from EKA, through the Nonappropriated Fund Procurement System, by the United States Army's Toledo Bend Morale, Welfare and Recreation ("MWR") Command, a Nonappropriated Fund Instrumentality located in Florien, Louisiana. The boats were to be used at Fort Polk's Toledo Bend MWR facility, which includes a boat rental operation that makes various types of recreational boats available for rent to members of the United States military.

Individuals who rent boats at the Toledo Bend MWR facility must be at least 18 years old and possess a valid safe boater card, which shows that the individual has taken and passed the United States Coast Guard Auxiliary Boater Safety Course. Prior to renting boats at the Toledo Bend MWR facility, Vandergriff passed the boater safety test, and was issued a safe boater card. The Toledo Bend MWR boat rental procedure includes an Operator' Briefing Checklist. The checklist included the following instructions:

> Wear PFDs when running combustion engine. Children 12 and under must wear life jacket at all times. No riding in elevated bass seats while combustion engine is running. Stay seated when underway. NO hanging

hands, feet, body off boat.  NO riding outside rail.

Only the person(s) named on the contract are authorized to operate the boat.
Driver can not consume alcoholic beverages.

Two weeks prior to Regan's accident, Vandergriff had rented a pontoon boat at the Toledo Bend MWR facility.  He read the Operator's Briefing Checklist and put his initials on it.  Vandergriff did not experience any problems with his boat rental that day.

On April 16, 2005, at 9:30 a.m., Vandergriff rented the subject pontoon boat from the United States's MWR facility at the Toledo Bend Reservoir.  At that time, he was not on duty and was not acting for, or on behalf of, the United States.  He was given and initialed the bottom of the Operator's Briefing Checklist.  The United States contends that Vandergriff's initials signify his understanding of the rules and agreement to abide by the rules.  See Record Document 198-2 at ¶ 9.  Starcraft contests whether Vandergriff's signature signifies understanding.  See Record Document 203 at ¶ 9.

At the time of Regan's accident, pontoon boat #35 was about 10 months old, and had been in the water at Toledo Bend for approximately 7-8 months prior to the accident. Between the date of purchase and the date of Regan's accident, civilian Army personnel performed the following maintenance and repairs to pontoon boat #35:

    a.      Aug. 25, 2004: oil change

    b.      Sept. 9, 2004: oil change

    c.      April 1, 2005: side door latch repaired

    d.      April 12, 2005: replaced fuse.

There were no modifications or repairs to the front gate or railing of pontoon boat #35 prior

to Vandergriff's April 16, 2005 rental.[2]

The United States now moves for summary judgment, arguing that Starcraft cannot prove that negligence of the United States caused or contributed to Regan's injuries. Alternatively, the United States moves for summary judgment pursuant to the Limitation of Liability Act, which would exonerate the United States from liability or limit its liability to the value of the pontoon boat involved in the accident.

## LAW AND ANALYSIS

**I.	Summary Judgment Standard.**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id., 477 U.S. at 322, 106 S. Ct. at 2552. If the party moving for summary judgment fails to satisfy its initial burden of demonstrating the absence of a genuine issue of material fact, the motion must be denied, regardless of the nonmovant's response. See Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). If the motion is properly made,

---

[2]Starcraft does not dispute this fact; however, it clarifies that it has no first hand knowledge of whether any other maintenance and repairs were made. See Record Document 203 at 26 (¶ 6).

however, Rule 56(c) requires the nonmovant to go "beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted). The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. See Little, 37 F.3d at 1075; Wallace, 80 F.3d at 1047. All factual controversies must be resolved in favor of the nonmovant. See Cooper Tire & Rubber Co. v. Farese, 423 F.3d 446, 456 (5th Cir. 2005).

Here, Starcraft's claims against the United States would be tried either by the Court or by using an advisory jury.[3] In certain nonjury cases, there is an even more lenient standard for summary judgment. See Phillips Oil Co. v. OKC Corp., 812 F.2d 265, 273 n. 15 (5th Cir. 1987). The Fifth Circuit elaborated on this more lenient standard:

> [T]he Court's primary concern [is] determining whether a given factual dispute require[d] submission to a jury. In a bench trial, however, there is no jury to whom such factual disputes may be submitted. In such a case, the judge will be the ultimate finder of fact. Although, as always, a district court must be aware that assessments of credibility come into sharper focus once live witnesses are heard, Nunez establishes that even at the summary judgment stage a judge in a bench trial has the limited discretion to decide that the same evidence, presented to him or her as trier of fact in a plenary trial, could not possibly lead to a different result.

Matter of Placid Oil Co., 932 F.2d 394, 398 (5th Cir. 1991), citing Nunez v. Superior Oil Co., 572 F.2d 1119, 1124 (5th Cir. 1978). The rationale of this more lenient standard is based on the principle that it makes little sense to forbid the judge from drawing inferences

---

[3] In the proposed Pretrial Order, the Plaintiffs, the United States, Vandergriff contend that Starcraft's claims against the United States are to be tried to the Court. See Record Document 223 at 61. Starcraft recommends an advisory jury. See id.

from the evidence submitted on summary judgment when that same judge will act as the trier of fact, unless those inferences involve issues of witness credibility or disputed material facts. See id. "If a trial on the merits will not enhance the court's ability to draw inferences and conclusions, then a district judge properly should draw his inferences without resort to the expense of trial." Id.

## II. Negligence/Unseaworthiness.

Starcraft alleges that the United States was negligent or at fault in the following ways:

(1)  The United States selected the wrong model boat for the application for which it was used on the day of the accident.

(2)  The United States did not enforce its established boating rules and procedures.

(3)  The United States did not properly maintain the vessels used at the MWR facility.

(4)  The United States did not properly instruct and warn about the operation of the boat.

(5)  The United States failed to enforce its policies and procedures relating to the rental and use of the subject boat from the MWR facility, causing or contributing to this accident.

(6)  The United States was responsible for selecting the subject boat.

(7)  The maintenance procedures of the United States contributed to the subject accident.

(8)  The United States failed to enforce the posted weight capacity of the subject boat.

Record Document 223 at 12-13. Maritime tort law, which embodies general principles of negligence, governs the instant matter. See In re Signal Int'l, LLC, 579 F.3d 478, 491 (5th Cir. 2009). "To prove negligence under the general maritime law, the plaintiff must

demonstrate the following:

>   (1)   there was a duty owed by the defendant to the plaintiff;
>
>   (2)   the duty was breached;
>
>   (3)   the plaintiff sustained injury; and
>
>   (4)   there is a ***causal connection*** between the defendant's conduct and the plaintiff's injury."

In re Nassau Bay Water Sports, Inc., 1995 WL 449710, *4 (emphasis added). Starcraft's evidentiary burden in its negligence claim is to show that the United States' conduct was, more likely than not, the cause of Regan's injuries. See QT Trading, LP v. M/V Saga Morus, No. 09-702, 2010 WL 2488983, *6 (S.D.Tex. June 15, 2010 ), citing Marquette Transp. Co. v. La. Machinery Co., 367 F.3d 398, 402 (5th Cir. 2004).

**Negligence/Fault**

Starcraft contends that the United States was negligent or at fault because it selected the wrong model boat.[4] Even if this Court assumes that the United States was somehow negligent in selecting a fishing model pontoon boat, which has a 19 inch rail height, rather than a cruise model pontoon boat, which has a 27 inch rail height,[5] Starcraft's argument fails due to causation. Starcraft's own expert testified that a higher rail would not have prevented Regan's accident:

>   Q:   So you do not know whether there - - a properly designed ABYC compliant to the 400-pound, 24-inch type guardrail system would or

---

[4] This contention seems to subsume Starcraft's assertion that the United States was negligent or at fault because it was responsible for selecting the subject boat.

[5] Augusto Villalon, Starcraft's expert, erroneously stated in his report that the railing height of a cruise model pontoon boat is 24 inches. He corrected the error at the Daubert hearing and stated that the rail height is 27 inches. See Record Document 204 at 189.

> would not have prevented this accident, correct?
>
> A: No. In my opinion the 24 inches wouldn't have stopped it either.
>
> Q: Because there's just too much velocity, is that what you're saying?
>
> A: ***Because the center of gravity, which is the point upon which you're going to rotate if you hit something, it is way above the 24-inch either. So that's why I say, you will have to put a cage to hold him in.***

Record Document 198, Exhibit 11 at 224-225 (emphasis added). While Starcraft's cruise model pontoon boats are indeed equipped with an 8 inch higher rail at the bow, Starcraft's own expert has conceded that it would have taken a cage to keep Regan on the boat. See id. Thus, Starcraft has not met its burden of establishing that the United States' selection of a fish model pontoon boat was, more likely than not, the cause of Regan's injuries.

Next, Starcraft contends that the United States did not effectively convey and/or enforce its established boating rules and procedures relating to the rental and use of pontoon boat #35. Starcraft contends that this "negligence" is evidenced by Vandergriff's alcohol consumption; the Vandergriff party's failure to return to the MWR at the appointed time;[6] the passengers failure to remain seated while the boat was underway;[7] Vandergriff

---

[6]Starcraft's expert, Augusto Villalon, rejected this contention as the proximate cause of the Regan accident, stating:

> Q: Okay. Do you think that the failure to return the boat at the time that the boating party had agreed to return the boat caused or contributed to this accident?
>
> A: Well, the very fact of it, no, it could have happened at any time . . . .

Record Document 213, Exhibit 2 at 239.

[7]See *infra* for more detailed analysis of this assertion.

allowing another passenger to operate the boat; and the MWR personnel's failure to review the Operator's Briefing Checklist.[8] Again, despite these alleged negligent acts, Starcraft's own expert, Augusto Villalon ("Villalon"), conceded that it would have been Vandergriff's responsibility, not the United States, to enforce the rules set forth in the Operator's Briefing Checklist once the boat was underway. See Record Document 198, Exhibit 11 at 274-275. Villalon further stated that he was not aware of any reason why the Army should not have entrusted Vandergriff to follow and enforce the rules that were given to him when he rented the pontoon boat. See id. at 275. These rules included:

> Stay seated when underway.
>
> Only the person(s) named on the contract are authorized to operate the boat. Driver can not consume alcoholic beverages.

Id., Exhibit 3. Finally, in his expert report, Villalon stated:

> Obviously the Army cannot follow each boat to ensure that rules are observed, and it is the responsibility of the operator to enforce good seamanship.

Id., Exhibit 14. The law simply does not require the MWR to anticipate, and warn against,

---

[8]Starcraft contends that the MWR personnel's failure to review the checklist with Vandergriff creates a genuine issue of material fact. Yet, it is undisputed that Vandergriff rented a pontoon boat at the MWR approximately two weeks before Regan's accident. At that time, Craig Edwards ("Edwards"), the MWR Supervisor, went through the checklist with Vandergriff. See Record Document 198, Exhibit 5 at 20. Edwards later handled Vandergriff's second rental of a pontoon boat on the day of the accident. See id. Vandergriff testified that Edwards recognized him, handed him the checklist, but did not go through it. See id. Vandergriff stated that he did not have any problems understanding the checklist and did not need Edwards to go through the checklist with him again. See id. Thus, Starcraft's argument fails for lack of a causal connection, as it has not established that Edwards' failure to go through the checklist the second time was a "substantial factor" in Regan's accident. See Thomas v. Express Boat Co., Inc., 759 F.2d 444, 448 (5th Cir. 1985) ("Proximate or legal cause is something more than 'but for' causation, and the negligence must be a 'substantial factor' in the injury.").

every potential danger or mistake a boater may make. See Craine v. U.S., 722 F.2d 1523, 1525 (5th Cir. 1984); In re: Fun Time Boat Rental & Storage, LLC, 431 F.Supp.2d 993, 1001 (D.Ariz. 2006).

Starcraft also maintains that the United States did not properly instruct[9] and warn Vandergriff and the passengers about the operation of the boat. The core of this argument relates to warnings to passengers not to sit in the bow seats while the boat is underway. In its opposition, Starcraft argues:

> The [United States] did undertake to warn against standing up while the boat was underway and not to sit in the front bow area. It was, however, not accomplished properly. The [United States] is not providing the renting operator or passenger[s] with copies of owner's manual. The [United States], therefore, must take other steps to warn about all the possible dangers on board the boat.

Record Document 203 at 17. It appears that Starcraft is asserting that the United States

---

[9]By using the word instruct, it is possible that Starcraft is attempting to assert a negligent entrustment claim, that is, the United States had a legal obligation and responsibility to adequately train individuals before allowing them to rent boats. "While maritime law recognizes the tort of negligent entrustment, such a tort requires that the boat owner knew or should have known that the person to whom the boat was entrusted (in this case, [Vandergriff]) was likely to use it in a dangerous manner." In re: Fun Time Boat Rental & Storage, LLC, 431 F.Supp.2d 993, 1001 (D.Ariz. 2006); see also Joyce v. Joyce, 975 F.2d 379, 385 (7th Cir.1992) ("[T]he essential thrust of the tort of negligent entrustment is that a shipowner can be held liable for negligent entrustment only if he knows or has reason to know that the person being entrusted is incapable of operating the boat safely.").

Here, the undisputed summary judgment evidence establishes that Vandergriff possessed a safe boater card, showing that he had taken and passed the United States Coast Guard Auxiliary Boater Safety Course. Approximately two weeks prior to the Regan accident, Vandergriff had rented a pontoon boar at the Toledo Bend MWR and experienced no problems with his boat rental that day. Starcraft's expert also stated that he was not aware of any reason why the Army should not have entrusted Vandergriff to follow and enforce the rules that were given to him when he rented the pontoon boat. Thus, any negligent entrustment claim asserted by Starcraft fails because it has not presented competent summary judgment evidence demonstrating that the United States knew or should have known that Vandergriff was incapable of operating the boat safely.

had a legal duty "to warn about *all* the possible dangers on board the boat." Id. (emphasis added). "The law imposes no requirement that one who rents equipment such as a boat or vehicle instruct . . . on every possible danger that could be faced." Craine, 722 F.2d at 1525. Rather, general principles of maritime law call for a shipowner to "exercise such care regarding a non-crew member as is reasonable under the circumstances." In re: Fun Time Boat Rental & Storage, LLC, 431 F.Supp.2d at 1001.

Here, pontoon boat #35 came equipped with warnings, including:

**! WARNING**
AVOID SERIOUS INJURY OR DEATH
FROM FALLING OVERBOARD.
DO NOT RIDE IN FISHING SEATS
WHEN BOAT IS IN MOTION.

Record Document 198, Exhibit 16. Additionally, MWR's Operator's Briefing Checklist advised that passengers should "stay seated while underway." Record Document 198, Exhibit 3. Starcraft has simply not produced sufficient summary judgment evidence to establish that additional warnings were legally required given the specific warning sign on the boat itself and the warning set forth in the Operator's Briefing Checklist.

Starcraft also attacked the United States' maintenance procedures, arguing that it did not properly maintain the vessels used at the MWR facility and/or the maintenance procedures contributed to the subject accident. In opposing the Motion for Summary Judgment, Starcraft does not adduce summary judgment evidence to attack the condition or maintenance procedures relating to the front railing of the subject pontoon boat. See Record Document 203 at 11-12. Instead, it focuses on the lack of an operational radio, alterations to or lack of a ladder, and MWR general maintenance procedures. See id. As

set forth *infra*, there is simply no causal connection between the lack of an operational radio and Regan's injuries. Further, while there is record evidence that there was a ladder on the subject pontoon boat on the day of the accident, Starcraft's expert stated in his deposition that the absence of a ladder did not cause or contribute to the accident:

> Q:  Okay. Do you believe that if in fact there wasn't a ladder on pontoon boat 35 on the date of the accident, do you believe that caused or contributed to the accident?
>
> A:  No.

Record Document 213, Exhibit 2 at 259. Starcraft's attack on general maintenance procedures is also insufficient to defeat summary judgment. The United States has come forward with undisputed summary judgment evidence regarding the maintenance of pontoon boat #35, establishing that at the time of Regan's accident, pontoon boat #35 was about 10 months old and had been in the water at Toledo Bend for approximately 7-8 months prior to accident. Between the date of purchase and the date of Regan's accident, civilian Army personnel performed regular maintenance and repairs to pontoon boat #35, including oil changes, repairs to a side door latch, and fuse replacement. There were no modifications or repairs to the front gate or railing of pontoon boat #35 prior to Vandergriff's April 16, 2005 rental. Starcraft does not dispute these facts, but rather "clarifies" that it has no first hand knowledge of whether any other maintenance and repairs were made. See Record Document 203 at 26 (¶ 6). When asked about the Army's maintenance of pontoon boat #35, Villalon, Starcraft's expert, testified: (1) he is not aware of any evidence that the Army had made any changes to the front gate of pontoon boat #35 prior to the accident; (2) he is not aware of any evidence that the gate was broken or damaged in any way at the time the boat was rented to the Vandergriff party; and (3) he is not aware of any evidence

that the boat was not in good condition at the time it was rented to Vandergriff. See Record Document 198, Exhibit 11 at 235, 253, 262. Therefore, Starcraft's conclusory allegations as to general maintenance procedures are insufficient to withstand summary judgment. See Int'l Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1266 (5th Cir. 1991) ("Summary judgment, to be sure, may be appropriate, even in cases where elusive concepts such as motive or intent are at issue,if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.").

Finally, Starcraft maintains that the United States was negligent or at fault because it failed to enforce the posted weight capacity of the subject boat. As set forth more fully *infra*, two experts in this matter have testified that the weight of the individuals on the subject boat played no role in the accident because the weight of the passengers would not impact the handling or performance of the boat. See Record Document 213, Exhibit 2 at 135-136; Record Document 203, Exhibit G at 178. Therefore, Starcraft has failed to establish that any failure to enforce the posted weight was, more likely than not, the cause or a contributing factor of Regan's injuries.

**Unseaworthiness**

Starcraft further contends that the subject pontoon boat was unseaworthy because the radio was not working and because the boat was overloaded. To establish causation for unseaworthy claims, Starcraft "is required to establish a causal connection between [Regan's] injury and the breach of duty that rendered the vessel unseaworthy." Nunez v. Weeks Marine, Inc., No. 06-3777, 2009 WL 1789437, *2 (E.D.La. June 19, 2009), citing Gavagan v. U.S., 955 F.2d 1016, 1020 (5th Cir.1992) ("To establish the requisite proximate cause in an unseaworthiness claim, a plaintiff must prove that the unseaworthy condition

played a substantial part in bringing about or actually causing the injury and that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness."). Here, even if the Court assumes the existence of unseaworthy conditions, Starcraft has not adduced sufficient summary judgment evidence to establish the requisite causal connection between the unseaworthy conditions and Regan's injuries.

There is record evidence that Vandergriff was running late in returning the subject pontoon boat to the rental facility because he had gotten lost. Starcraft argues that if the radio has been operational, Vandergriff or one of his passengers could have contacted the MWR for assistance or the MWR could have contacted Vandergriff to inquire as to his tardiness. Starcraft further contends:

> The Vandergriff party would not, therefore, have been on the lake at the time the accident occurred. The lack of an operational radio, therefore, directly resulted in the accident.

Record Document 203 at 16. This argument is simply implausible in light of the causation standard set forth above. Starcraft has presented no summary judgment evidence that Vandergriff tried to contact the MWR prior to the accident or that the MWR tried to contact the Vandergriff party to inquire as to his location prior to the accident. Starcraft has failed to establish the requisite proximate cause, that is, that an inoperable radio "played a substantial part in bringing about or actually causing" Regan's injuries and that Regan's injuries were "either a direct result or a reasonably probable consequence of the unseaworthiness." Gavagan, 955 F.2d at 1020.

Starcraft's overloading argument likewise fails due to causation. Starcraft's own own expert opined that he believed that "the amount of poundage of the people on the [subject] boat" played ***no role*** in the accident. See Record Document 213, Exhibit 2 at

135-136 (emphasis added). Robert Swint, one of Regan's experts, has also reached the same opinion, stating in his deposition that the weights of the individuals on board would have *no effect* on the handling or performance of the subject boat. See Record Document 203, Exhibit G at 178 (emphasis added). Therefore, Starcraft's conclusory assertion that overloading caused the accident is insufficient to create a genuine issue of material fact.

## CONCLUSION

The Court finds that Starcraft has failed to present competent summary judgment evidence establishing a genuine issue of material fact as to whether any negligence or fault on the part of the United States caused or contributed to Regan's injuries. Accordingly, the Motion for Summary Judgment (Record Document 198) filed by the United States of America is **GRANTED** and all of Starcraft's claims against the United States are **DISMISSED**.[10]

An order consistent with the terms of the instant Memorandum Ruling shall issue

---

[10] Alternatively, the United States had moved for summary judgment pursuant to the Limitation of Liability Act. Because Starcraft failed to meet its summary judgment burden as to its negligence claims, the Court did not analyze exoneration pursuant to the Limitation of Liability Act. However, a cursory review of the statute and applicable standards reveals that Starcraft would likely face similar causation hurdles in surviving summary judgment based on the Limitation of Liability Act (46 U.S.C. § 30505(a), *et seq.*). See In re Signal Int'l, LLC, 579 F.3d 478, 499 (5th Cir. 2009) ("[An owner's] burden to prove lack of privity or knowledge only arises when [the claimant] has shown [negligence or] unseaworthiness was the proximate cause of the loss."); In re Omega Protein, 548 F.3d 361, 371 (5th Cir. 2008) ("[I]f the vessel's negligence or unseaworthiness is the proximate cause of the claimant's loss, the plaintiff-in-limitation must prove it had no privity or knowledge of the unseaworthy conditions or negligent acts."); Brister v. A.W.I., Inc., 946 F.2d 350, 355 (5th Cir 1991) ("[A] plaintiff must prove that the unseaworthy condition played a substantial part in bringing about or actually causing the injury."); Empresa Lineas Maritimas Argentinas S.A. v. U.S., 730 F.2d 153, 155 (5th Cir.1984) (first determining "what acts of negligence or conditions of unseaworthiness caused the accident" before determining "whether the shipowner had knowledge of the events which caused the loss.").

herewith.

      **THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 24th day of June, 2010.

                                            _____
                                                        S. MAURICE HICKS, JR.
                                         UNITED STATES DISTRICT JUDGE